**STATE of Iowa, Appellee,**

v.

**Raymond William ASWEGAN, Appellant.**

**No. 66866.**

Supreme Court of Iowa.

March 16, 1983.

Francis C. Hoyt, Jr., Appellate Defender, and Linda Del Gallo, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Mary Jane Blink, Asst. Atty. Gen., and Dan Johnston, County Atty., for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McCORMICK, and CARTER, JJ.

REYNOLDSON, Chief Justice.

Defendant Aswegan appeals from his conviction on three counts of first-degree murder, a violation of Iowa Code section 707.2. He raises issues relating to competency to stand trial, admission of evidence, included offenses, and ineffective assistance of counsel. We affirm.

Defendant does not challenge the sufficiency of the evidence. From the record the jury could have found the defendant set fire to the home in which his former wife

lived, killing three of the residents. Other facts will be noted only as they relate to the issues treated in the divisions that follow.

## I. *Defendant's Competency to Stand Trial.*

After his indictment and not guilty plea, defendant requested, and was granted, a pretrial competency hearing on November 3, 1980. Dr. Olson, a psychiatrist at Broadlawns Hospital, evaluated defendant pursuant to court order. He testified defendant was then "really not competent to assist effectively in his own defense," and was suffering from an "organic delusional syndrome." Defendant was discharged from the military on a diagnosis of "psychoneurosis," and had a history of alcoholism. District court, Judge Missildine presiding, found defendant unable to assist effectively in his defense, and thus incompetent to stand trial. The court committed defendant to the Iowa Security Mental Facility at Oakdale for further examination and treatment.

After forty days of treatment and evaluation at Oakdale, a second competency hearing was held January 23, 1981. Dr. Fredrickson, a staff psychiatrist at Oakdale who examined and treated defendant, testified that despite defendant's delusions he was competent to stand trial.

In a prior letter Dr. Fredrickson wrote that defendant

probably has not and/or will not be too easy to work with, that is assisting his attorney in his defense; because of his personality style and possible delusions. He very likely could also create some problems in the courtroom. I would question or doubt if any treatment is going to change this. I would thus recommend or suggest going ahead with the judicial proceedings, or at least making an attempt at such.

At the hearing Dr. Fredrickson provided his reasons for his basic finding and recommendation that trial proceed:

[Defendant] is in full contact with reality; has no thinking disturbance and is fully coherent and ... he is capable of understanding ... judicial proceed-

ings.... He should be capable of understanding anything his attorney has to say to him.

This witness testified defendant would be able to aid his attorney in the trial in developing strategy for the defense, selection of jury, and interrogation of witnesses.

Following this second hearing the district court, Judge Novak presiding, found that defendant "appreciates the charge, understands the proceedings, and will be able to effectively assist in his defense." Trial court determined defendant was competent to stand trial, and fixed a trial date.

Defendant appeals from this order, asserting the evidence did not support trial court's determination of competency. He also claims trial court erred in failing to suspend the proceedings during trial for a third hearing on the issue of his competency.

The controlling statute is Iowa Code section 812.3 (1981), which provides:

If at any stage of a criminal proceeding it reasonably appears that the defendant is suffering from a mental disorder which prevents him or her from appreciating the charge, understanding the proceedings, or assisting effectively in the defense, further proceedings must be suspended and a hearing had upon that question.

■ Defendant does not raise a due process challenge with respect to the competency hearing. Our review therefore is not de novo. *See State v. Jackson,* 305 N.W.2d 420, 425 (Iowa 1981); *cf. State v. Pedersen,* 309 N.W.2d 490, 501 (Iowa 1981) (de novo review to determine a due process issue). In this case there was substantial evidence, in the form of expert testimony, to support trial court's finding of competency.

■ Defendant raises a due process issue on trial court's failure to provide a third hearing during the trial, citing *Pedersen.* Because constitutional safeguards thus are implicated, we review de novo "to examine the information before the trial court to determine if at the relevant time an unresolved question of the defendant's compe-

tency reasonably appeared." *State v. Kempf,* 282 N.W.2d 704, 707 (Iowa 1979); *see Drope v. Missouri,* 420 U.S. 162, 174–75, 95 S.Ct. 896, 905, 43 L.Ed.2d 103, 115 (1975); *State v. Lucas,* 323 N.W.2d 228, 232–33 (Iowa 1982); *State v. Lyon,* 293 N.W.2d 8, 9 (Iowa 1980).

■ Established principles guide our analysis. Once a defendant is found competent, the presumption of competency continues until contrary evidence is produced. *Jackson,* 305 N.W.2d at 425. This evidence should be such as would lead a reasonable person to believe a substantial question of defendant's competency exists. *Kempf,* 282 N.W.2d at 706. Relevant factors in determining whether due process requires an inquiry as to competency include (1) defendant's irrational behavior, (2) demeanor at trial, and (3) any prior medical opinion on competency to stand trial. *Lucas,* 323 N.W.2d at 232; *see Drope,* 420 U.S. at 180, 95 S.Ct. at 908, 43 L.Ed.2d at 118.

■ Here defendant's brief concedes "no bizarre or abnormal conduct on the part of Mr. Aswegan occurred during his trial." Nonetheless, defendant argues that certain "delusions" prevented him from effectively assisting in his defense. For the most part the "delusions" referred to involved defendant's attempted rebuttal of the strong evidence against him. Thus he testified one of his companions (who testified against him) was attempting to kill defendant's former spouse, and that defendant's threats against her were intended to keep her off the street and safe from the companion's intended harm.

Responding to testimony that following an unsuccessful involuntary hospitalization hearing he had initiated against his former wife he had threatened to "do it the hard way," he testified he only meant he would file certain charges against her at the county attorney's office. He accounted for his being in the neighborhood of the home that was burned by testifying he was protecting his former wife. The thrust of defendant's testimony was to place all blame on his erstwhile companion who had provided compelling and damaging evidence against him.

Apparently attempting to invoke the jury's sympathies, he asserted persons had told him of his ex-wife's threats against him. Finally, he denied participating in the arson of the home, contending he was drunk and in bed on the night of the fire.

There is nothing in the record before us to indicate the claimed "delusions" evidenced in defendant's testimony were other than a last-ditch, desperate attempt to avoid the State's overwhelming evidence against him. That there was no logical and convincing explanation available to counteract the State's evidence does not mean defendant's illogical and unconvincing excuses were manifestations of delusions. Although he took the stand against counsel's advice, that is not an uncommon occurrence.

Defendant claims his unresponsive rambling and disjointed responses were indicative of his incompetency. He did respond to both direct and cross-examination questions. He sometimes responded narratively, but no objections were made that might have limited his answers. This common occurrence is not sufficient to raise a substantial question of defendant's competency. We hold this record does not reveal sufficient evidence to cause a reasonable person to believe a substantial question of defendant's competency existed.

## II. *Admission of Photographs.*

■ The three fire victims were the mother and two grandchildren of defendant's former wife. The State offered in evidence a photograph of one of the deceased grandchildren as he was found, covered with soot, in a clothes basket on the second floor of the home. Trial court overruled defendant's objection the picture did not tend to prove any element of the offense and was "grossly prejudicial." Objections to a photograph of the two other victims were sustained. The State also offered three other photographs depicting the victims before the fire. The court overruled defendant's objections that these exhibits had no probative value and were inflammatory. He now asserts these rulings constitute reversible error.

The determination to admit or to refuse admission into evidence of the photographs lies initially in the discretion of the trial court, and we will not reverse except when an abuse of discretion is shown, as where the evidence is clearly irrelevant or prejudicial. *State v. McGhee,* 280 N.W.2d 436, 440–41 (Iowa 1979), *cert. denied,* 444 U.S. 1039, 100 S.Ct. 712, 62 L.Ed.2d 674 (1980); *accord State v. Seehan,* 258 N.W.2d 374, 378 (Iowa 1977); *see State v. Coburn,* 315 N.W.2d 742, 746 (Iowa 1982); *State v. Walton,* 311 N.W.2d 110, 111 (Iowa 1981).

■ .There was no error in admitting the photograph of the victim, taken following the fire. The photograph was relevant in further illustrating the manner and means of the victim's death, and was not inadmissible merely because of its capacity to invoke an emotional response. *See State v. Coburn,* 315 N.W.2d at 746; *State v. McGhee,* 280 N.W.2d at 441; *State v. Seehan,* 258 N.W.2d at 378; *State v. Nowlin,* 244 N.W.2d 596, 600–01 (Iowa 1976).

■ Admission of the photographs of the three victims taken before the fire also was within trial court's discretion, weighing "the probative value of the exhibits [against] the prejudice which would be caused by their admission into evidence." *State v. Fuhrmann,* 257 N.W.2d 619, 625 (Iowa 1977).

Although neither the parties nor the court have identified an Iowa decision on point, other jurisdictions have found no error in admission of such evidence, on grounds the photograph shows the identity of the victim, *People v. Sullivan,* 97 Mich. App. 488, 492, 296 N.W.2d 81, 83 (1980), *app. denied,* 411 Mich. 966, 308 N.W.2d 109 (1981), or that the victim prior to the crime was a "creature in being." *State v. Scott,* 626 S.W.2d 25, 28 (Tenn.Cr.App.1981); *see Bullock v. State,* 391 So.2d 601, 609 (Miss. 1980), *cert. denied,* 425 U.S. 931, 101 S.Ct. 3068, 69 L.Ed.2d 432 (1981); *State v. Teter,* 633 S.W.2d 417, 420 (Mo.App.1982); *State v. Brown,* 306 N.C. 151, 172–73, 293 S.E.2d 569, 583 (1982).

■ In the circumstances of this case, we hold trial court's exercise of discretion in admitting these photographs was not "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Morrison,* 323 N.W.2d 254, 256 (Iowa 1982). There was no reversible error in the admission of any of these photographs.

### III. *Lesser Included Offenses.*

Defendant contends trial court erred in overruling his request to submit "lesser included offenses" of arson in the second and third degrees.

Defendant was charged under Iowa Code section 707.2, which relevantly provides:

A person commits murder in the first degree when he or she commits murder under any of the following circumstances:

1. The person willfully, deliberately, and with premeditation kills another person.

2. The person kills another person while participating in a forcible felony.

"Forcible felony" is defined as any "felonious assault, murder, sexual abuse, kidnapping, robbery, arson in the first degree, or burglary in the first degree." Iowa Code § 702.11. Thus, first-degree arson will provide the necessary element of "forcible felony" required for section 707.2(2) first-degree murder.

■ To pass the legal or element prong of our test for lesser included offenses, the lesser offense must be composed *solely* of some but not all elements of the greater crime. *State v. Wales,* 325 N.W.2d 87, 88 (Iowa 1982). The lesser offense necessarily is included in the greater offense if it is impossible to commit the greater offense without also committing the lesser. *Id., see State v. Webb,* 313 N.W.2d 550, 552 (Iowa 1981).

We first note defendant is not charged with arson, he is charged with felony murder. The crucial element in the State's charge is defendant's participation in the offense of arson in the first degree. Second- or third-degree arson, even making the assumption these were included of-

fenses in first-degree arson, are by necessary exclusion not elements of felony murder under Iowa Code section 707.2(2) and the above principles. Further, second- and third-degree arson are not included offenses because it is not essential to prove the commission of arson in order to convict for section 707.2(2) felony murder: It is only necessary to prove defendant was participating in it. *See* Iowa Code section 702.13 ("A person is 'participating in a public offense' . . . whether the person is successful or unsuccessful in committing the offense."); *State v. Mead,* 318 N.W.2d 440, 446 (Iowa 1982); *State v. Johnson,* 291 N.W.2d 6, 8 (Iowa 1980).

 Finally, defendant argues the absence of instructions on second- and third-degree arson precluded the jury from considering any of the lesser included offenses of felony murder in reaching its verdict. Trial court did instruct on the included offenses of second-degree murder, voluntary manslaughter and involuntary manslaughter. We perceive no requirement that the court further submit offenses that were not elements of either the general charge of section 707.2(1) murder or section 707.2(2) felony murder. *See Wales,* 325 N.W.2d at 89–90. We find no error in trial court's refusal to submit the alleged lesser included offenses.

### IV. *Effective Assistance of Counsel.*

 Defendant, represented at trial by other counsel, now asserts he was denied effective assistance of trial counsel in violation of the sixth amendment to the United States Constitution. He points to trial counsel's failure to object to certain alleged erroneous jury instructions, and to file a timely motion, supported by affidavits, for change of venue. Although this record does not reflect trial counsel's performance fell below the range of normal competency, we reserve this issue, which may be raised by defendant in postconviction proceedings.

The judgment entered in district court is affirmed.

AFFIRMED.